# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1287V

| | |
|---|---|
| ALEX BROWN,<br><br>      Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: December 18, 2024 |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA,* for Petitioner.

*Matthew Murphy, U.S. Department of Justice, Washington, DC,* for Respondent.

**DECISION AWARDING DAMAGES**[1]

On September 29, 2020, Alex Brown filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the tetanus, diphtheria, acellular pertussis vaccine on October 29, 2018. Amended Petition at 1, ¶¶ 1, 3. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] On August 18, 2021, Petitioner filed a more detailed amended petition. ECF No. 24.

ECF No. 19. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[4] so I ordered briefing on the matter.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$170,000.00**, **for his past pain and suffering. Petitioner is not entitled to any amount of past unreimbursed expenses or lost wages.**

**I.    Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and

---

[4] Less than five months after I determined Petitioner was entitled to compensation, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed Jan.9, 2023, ECF No. 52.
.

suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.     Prior SIRVA Compensation Within SPU[5]

### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2024, 4,138 SPU SIRVA cases have resolved since the inception of SPU ten years before. Compensation has been awarded in the vast majority of cases (4,016), with the remaining 122 cases dismissed.

2,308 of the compensated SPU SIRVA cases were the result of a reasoned ruling that the petitioner was entitled to compensation (as opposed to an informal settlement or concession).[6] In only 235 of these cases, however, was the amount of damages *also*

---

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] The remaining 1,708 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

determined by a special master in a reasoned decision.[7] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[8]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[9] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *235* | *2,044* | *29* | *1,708* |
| **Lowest** | $35,000.00 | $10,000.00 | $45,000.00 | $2,500.00 |
| **1st Quartile** | $67,910.00 | $60,539.19 | $90,000.00 | $35,000.00 |
| **Median** | **$85,920.03** | **$80,240.98** | **$130,000.00** | **$50,000.00** |
| **3rd Quartile** | $125,066.35 | $109,681.54 | $162,500.00 | $77,500.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 235 SPU SIRVA cases in which damages were the result of a reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $35,000.00 to $215,000.00, with $85,000.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging from

---

[7] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,044 cases) or stipulation (29 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[8] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[9] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

4

$250.00 to $1,500.00.[10] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[11]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In eight cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### III.    The Parties' Arguments

Petitioner requests a past pain and suffering award of $198,000.00. Petitioner's Memorandum in Support of Damages ("Brief") at 23. Characterizing his treatment as "lengthy and involved" (*id.* at 20), he lists three MRIs, four injections (including a bone marrow concentrate injection), 67 PT sessions, and two surgeries, spanning two years

---

[10] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs*., No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[11] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs*., 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

(*id.* at 21). Petitioner favorably compares the facts and circumstances in his case to those suffered by the petitioners in *Pruitt, Lavigne, McDorman, Schoonover,* and *Meirndorf*[12] - decisions featuring awards ranging from $185,000.00 to $200,000.00. Brief at 21-22. Although he argues that his case is most analogous to *Pruitt* and *Lavigne,* he insists that his pain and suffering award should be greater than what those claimants received, due to the gaps in treatment experienced by the *Pruitt* petitioner and shorter duration of the *Lavigne* petitioner's injury. *Id.* at 23.

Petitioner also seeks $1,883.62 for past expenses and $1,201.44 for past lost wages. Brief at 18-19. The total expenses include mileage costs of $1,194.21, as detailed in a list of dates and miles traveled. *Id.* at 36-38. The lost wages represent one-half of the paid time off ("PTO") taken by Petitioner - three days in 2019, and three days in 2020. *Id.* at 18-19 (referencing *Gross v. Sec'y of Health & Hum. Servs.,* 154 Fed Cl. 109 (2021).

Respondent counters that Petitioner should be awarded only $90,000.00 for pain and suffering. Respondent's Brief in Support of Damages ("Opp.") at 1. Arguing that "[t]he physicians clearly delineated [P]etitioner's labral symptoms and supraspinatus symptoms" (*id.* at 10), he maintains that Petitioner's SIRVA lasted only until June 11, 2019, seven and one-half months post-vaccination. *Id.* at 9-10. As a comparable case, Respondent proposes *Hunt,*[13] in which $95,000.00 was awarded. Opp. at 10-11.

Respondent also argues that Petitioner is not entitled to the past expenses and lost wages that he seeks. Opp. at 11-12. He contends that the lodging and meals incurred during a stay in Vail, Colorado (March 31 through April 2, 2020) "do not correlate to any to any medical record or treatment," and identifies the cost of acne soap as similarly unrelated to Petitioner's SIRVA. *Id.* at 11. For amounts related to pharmacy expenses and the PTO Petitioner used, Respondent insists Petitioner has not provide adequate supporting documentation. Opp. at 11-12. Reimbursement of any PTO is only appropriate when a petitioner provides documentation showing that he would be eligible to receive the cash value of this time, for example at the conclusion of his employment. *Id.* at 12.

---

[12] *Pruitt v. Sec'y of Health & Hum. Servs.,* No. 17-0757V, 2022 WL 10075415 (Fed. Cl. Spec. Mstr. Sept. 15, 2022) (awarding $185,000.00 for past pain and suffering); *Lavigne v. Sec'y of Health & Hum. Servs.,* No. 19-1298V, 2022 WL 2275853 (Fed. Cl. Spec. Mstr. May 12, 2022) (awarding $198,000.00 for past pain and suffering); *McDorman v. Sec'y of Health & Hum. Servs.,* No. 19-0814V, 2021 WL 5504698 (Fed. Cl. Spec. Mstr. Oct. 18, 2021) (awarding $200,000.00 for past pain and suffering); *Schoonover v. Sec'y of Health & Hum. Servs.,* No. 16-1324V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (awarding $200,000.00 for past pain and suffering); *Meirndorf v. Sec'y of Health & Hum. Servs.,* No. 19-1876V, 2022 WL 1055475 (Fed. Cl. Spec. Mstr. Mar. 7, 2022) (awarding $200,000.00 for past pain and suffering).

[13] *Hunt v. Sec'y of Health & Hum. Servs.,* No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022).

## IV.     Appropriate Compensation

### A.     Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Mr. Brown suffered a moderate SIRVA injury that required two surgeries (six- and 20-months post-vaccination), four injections (two subacromial, one glenohumeral, and one bone marrow concentrate), numerous PT sessions, and two MRIs. Although his pain levels could fluctuate between one to seven, he usually reported a more moderate level of four or lower. *E.g.,* Exhibit 5 at 30 (reporting a current pain of three out of ten at his first OT session); Exhibit 4 at 44 (noting mild pain of four at the first orthopedic visit). And he obtained good, albeit temporary, relief from the injections he received, especially the first administered. *E.g.,* Exhibit 4 at 35, 39 (describing 90 percent temporary pain relief); Exhibit 5 at 26 (describing 97 percent temporary relief at an OT session). Furthermore, his treating physicians characterized his labral tears and glenohumeral arthritis and chondral defect as unrelated to his vaccine injury, and most of his later treatment was focused on these conditions. *See* Exhibit 4 at 24, 37, 39 Exhibit 5 at 27-28, 33; Exhibit 10 at 5-12.

At the same time, however, the record is not supportive of Respondent's contention that Petitioner's SIRVA had fully resolved by mid-June 2019. Special masters have been reasonably reluctant to accept such definitive symptoms conclusion dates in the SIRVA context. *See,* e.g*., Pruitt,* 2022 WL 10075415, at *9. The workers' compensation carrier's continued reimbursement of Petitioner's medical costs through the fall of 2020 undermines this assertion as well. *See* Exhibit 33 at 232-596. Although Petitioner's treating physicians clearly ascribed some symptoms to the non-SIRVA-caused labral tear and glenohumeral arthritis and defect, they did not opine that Petitioner's SIRVA-related symptoms had fully resolved. The evidence showing that some of Petitioner's pain and suffering was more likely connected to these unrelated conditions merely dictates a reduction in the amount awarded for pain and suffering.

7

I agree there are substantial similarities between the facts and circumstances in Petitioner's case with those suffered by the *Pruitt* petitioner, but there are differences that necessitate a lower pain and suffering award in this case. The *Pruitt* petitioner pursued treatment for more than four years – a duration approximately twice that in this case. *Pruitt,* 2022 WL 10075415, at *8-9. And the special master in that case determined that the *Pruitt* petitioner's significant gap in treatment was more likely due to her lack of insurance during that time, rather than a reduction or cessation of symptoms. *Id.* at *9.

Similarly, the *Lavigne* petitioner's SIRVA was more severe, involving a vaccine reaction that resulted in significant pain and limits in mobility. *Lavigne,* 2022 WL 2275853, at *1-3. Substantial scar tissue was observed during both surgeries the *Lavigne* petitioner underwent. *Id.* at *2. And the *Lavigne* petitioner did not suffer from any non-vaccine related conditions that would warrant a lower pain and suffering award. *Id.* at *1-3.

Overall, given that Petitioner's case involved two surgeries, he properly should receive an award greater than the $90,000.00 proposed by Respondent. *Hunt,* a case involving only one surgery, two months of significant pain, and an overall injury duration of only nine months, cannot be considered an adequate comparable case. Thus, I find that Petitioner is entitled to a past pain and suffering award of **$170,000.00**.[14]

### B. Past Unreimbursed Expenses

Although I do not accept Respondent's assertion that *no* expenses incurred after mid-June 2019 should be reimbursed, it remains the case that Petitioner has failed to provide adequate documentation or explanation to warrant the compensation he seeks for past unreimbursed expenses. Brief at 26-35. This is because Petitioner has failed to substantiate the listed expenses, to establish they were needed to treat his SIRVA, and to explain why they were not covered by his workers' compensation claim. And entries related to items such as acne soap, a balance trainer, and the March trip to Vail, Colorado, have not been persuasively linked to the SIRVA. *Id.* at 26, 31-35.

Regarding the mileage reimbursement, Petitioner has not provided the evidence needed to support the amounts sought. *See,* e.g. *Morgan v. Sec'y of Health & Hum. Servs.*, No. 20-1286V, 2022 WL 4717958, at *8, 8 nn.12-13 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) (finding mileage costs should not be reimbursed when the petitioner had failed to

---

[14] While making this determination, I recognize that this award is less than that awarded in another case, also involving two surgeries, with a shorter treatment duration - $175,000.00. *Tracy v. Sec'y of Health & Hum. Servs.,* No. 20-1312V, 2024 WL 1343003 (Fed. Cl. Spec. Mstr. Feb. 27, 2024) (short-form decision incorporating the transcript from an Expedited Motions Hearing). That case, however, involved greater pain severity and lacked the simultaneous non-vaccine-related conditions found in this case. *Id.*

establish that these distances were traveled in a vehicle she owned, for the purpose of obtaining the needed medical care). Instead, he provided only a list of trips between his house and medical appointments. Brief at 36-38. He did not provide the additional evidence needed to show that he used his personal vehicle to travel directly to and from the medical visits which correspond to these entries. Brief at 36-38.

### C.    Past Lost Wages - PTO

I also will not award Petitioner the amount sought reflective of one-half of the PTO he expended in this case. Brief at 39-53. It is reasonable to reimburse a petitioner for any PTO utilized, but only *provided* he can show that his employer would have paid him for this time had he not used it in connection with the vaccine injury. *Compare Gross v. Sec'y of Health & Hum. Servs.*, No. 19-0835V, 2021 WL 2666685, at *6 (Fed. Cl. Spec. Mstr. March 11, 2021), *mot. for review den'd*, 154 Fed. Cl. 109 (2021). The *Gross* petitioner received one-half of the value of the PTO she used *because* she established that at her retirement shortly after her vaccine injury onset, her company would have paid her the cash amount of any PTO she still possessed at that time. *Id.* The Petitioner in this case has not provided the additional evidence needed to make a comparable showing.

### Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I find that $170,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[15] **Petitioner is not entitled to the amounts he seeks for actual unreimbursable expenses and lost wages.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $170,000.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[16]

---

[15] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master